NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| Maria R. CENTENO, | : | |
| Plaintiff, | : | Civil No. 09-6023 (AET) |
| v. | : | **OPINION & ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter has come before the Court to review pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying Plaintiff Maria R. Centeno's application for disability insurance benefits under Title II and Title XVI of the Social Security Act. Plaintiff seeks a reversal or, in the alternative, remand of the Commissioner's decision denying her request for Social Security benefits [10]. Defendant Commissioner of Social Security ("Commissioner") seeks affirmance of the Commissioner's decision [11]. The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to L. Civ. R. 9.1(b). For the reasons detailed below, we will remand to the Commissioner for further proceedings consistent with this opinion.

II.	BACKGROUND

Plaintiff, currently forty-nine years old, worked as a paralegal at a law firm for sixteen years until June 15, 2001, when she left work for medical reasons. (R. 37.)[1] She was ultimately terminated later that year. (R. 38.) This appeal concerns Plaintiff's second application for disability benefits.[2] Plaintiff applied for benefits on April 18, 2006, claiming disability status as of September 21, 2003, although this onset date was later amended to September 30, 2003. (R. 11.)

The precise reason for Plaintiff's claimed disability is not an isolated incident but rather a confluence of factors. Plaintiff initially began having difficulty at work as a result of her inability to handle emotionally the factual content of the personal injury and product liability cases to which she was assigned. (R. 40–41.) These mental difficulties were compounded by physical pain in Plaintiff's legs, neck, arms, and back, which was diagnosed as fibromyalgia. (R. 41–42.) Plaintiff did not file for unemployment benefits, but began receiving a monthly disability income through a private insurer. (*Id.*) Plaintiff received psychiatric treatment for several years, (R. 45–48). As of 2008, she was continuing to attend physical therapy, (R. 48), although Plaintiff's obesity has rendered this treatment more difficult, (R. 54). Plaintiff also claims symptoms of post-traumatic stress disorder resulting from her experiences growing up living in housing projects where many of her peers died of "gunshots or AIDS"—Plaintiff's sister being in the latter category. (R. 61.) In short, Plaintiff claims that her pain and depression prevent her from being able to focus or sit comfortably for long enough to work in her former paralegal position or any

---

[1] Page citations listed as "(R. __)" refer to the certified Administrative Record provided by the Defendant pursuant to Fed. R. Civ. P. 9.1.

[2] Plaintiff's first application was filed on October 17, 2001, and was initially denied on December 2, 2002. After a further hearing requested by Plaintiff, her disability claim was again denied on September 29, 2003. Plaintiff appealed and the Social Security Administration Appeals Council denied Plaintiff's request for review on December 11, 2003. Upon Plaintiff's timely civil suit under 42 U.S.C. § 405(g), the District Judge affirmed the Commissioner's denial of benefits in an Order dated June 30, 2005. *Centeno v. Barnhart*, Civ. No. 04-3784 (D.N.J. June 30, 2005).

other job.

On September 4, 2008, Administrative Law Judge Paula Garrety held an administrative hearing at which she reviewed the medical evidence and heard Plaintiff's testimony regarding the above facts, as well as the testimony of vocational expert Dr. Carolyn Rutherford.  (R. 32–77.) On November 21, 2008, ALJ Garrety issued a decision concluding that Plaintiff did not qualify for disability from her onset date through her date last insured, and that Plaintiff was capable of performing jobs existing in significant numbers in the national economy.  (R. 21.)  This decision became the Commissioner's final decision when the Social Security Administration Appeals Council denied Plaintiff's appeal on June 25, 2009.  (R. 2.)  After receiving an extension of time to file a civil action, (R. 1), Plaintiff filed the Complaint on November 23, 2009 requesting reversal or remand of the decision.  (Compl. 2–3) [1].

### III.    ANALYSIS

**A.  Standard of Review**

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ determinations, this Court applies a "substantial evidence" standard of review. 42 U.S.C. § 405(g).  The "substantial evidence" standard is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and therefore requires "more than a mere scintilla."  *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 400 (1971)).  Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently.  42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38

(3d Cir. 2001).

### B. Standard for Disability Benefits Determination

Disability is defined as the "inability to engage in any substantial gainful activity[3] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." *Id.* § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims under the Act. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The threshold inquiry looks to (1) whether the claimant has engaged in any "substantial gainful activity" since her alleged disability onset date. If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work. *Id.* §§ 404.1520(b)–(c), 404.1521. If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is automatically eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied his burden of establishing that he or she is unable to return to his past relevant work. *Id.* §§ 404.1520(f), 404.1560(b); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 92 (3d Cir. 2007) (internal citations omitted). If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in

---

[3] "Substantial gainful activity" refers to jobs that exist in large numbers in the region where the claimant lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).

significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(g); *Poulos*, 474 F.3d at 92.

### C. The ALJ's Findings and Final Determination

Following this five-step procedure, ALJ Garrety concluded as follows: (1) Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 30, 2003 through her date last insured of December 31, 2006, (R. 13); (2) Plaintiff had severe impairments including degenerative disc disease, degenerative joint disease of the knees, fibromyalgia, obesity, depression, anxiety and possible post-traumatic stress disorder, (R. 13); (3) Plaintiff did not have an impairment or combination of impairments that met or equaled listings 1.02, 1.04, 12.04, 12.06, and paragraph B, (R. 14); (4) Plaintiff could not perform any past relevant work at her former paralegal job through the date last insured, (R. 19); and (5) Plaintiff retained the RFC to perform "light work," (R. 15), such that jobs as an "assembler," "inspector," or "packer" existed in significant numbers in the national economy for an individual with the Plaintiff's characteristics, (R. 20). Accordingly, the ALJ concluded that Plaintiff was not disabled through December 31, 2006, her date last insured. (R. 21.)

### D. Analysis of the ALJ's Determination

On appeal, Plaintiff asserts that the record establishes her eligibility for benefits and that the final administrative decision is not based on the substantial evidence in the record. (Pl.'s Br. 7.) It appears undisputed that the ALJ properly concluded at step one of the inquiry that Plaintiff did not engage in substantial gainful activity from the onset date through her date last insured. (R. 13.) It is the remainder of the sequential analysis to which Plaintiff objects. Specifically, Plaintiff argues as follows: (1) the ALJ failed to consider Plaintiff's morbid obesity at steps two through five of the sequential evaluation; (2) the ALJ failed to explain adequately the determination; (3)

the ALJ improperly rejected the uncontradicted medical opinions of Mr. Dueker, Mr. Cathcart, and Dr. Javia; (4) the ALJ failed to evaluate Plaintiff's pain symptoms; and (5) the ALJ failed to satisfy her burden of showing the existence of other jobs in significant numbers in the national economy.

### 1.  Consideration of Obesity

Plaintiff argues that, contrary to Social Security Ruling ("SSR") 02-1p, the ALJ failed to consider the exertional, postural and accommodations-related limitations created by Plaintiff's obesity.  (Pl.'s Br. 14.)  Plaintiff also argues that the ALJ failed to combine obesity with Plaintiff's other impairments and compare this combined impairment to the listings at step three of the sequential inquiry.  (*Id.* at 15.)  The Commissioner responds that remand is unnecessary because Plaintiff has not specified how her obesity further impaired her ability to work, nor has she shown that her obesity would have affected the five-step analysis undertaken by the ALJ.  (Def.'s Br. 6.)

The background of obesity's treatment under the Social Security Act warrants summary here.  Previously, obesity was included in the Listing of impairments under 9.09 as an automatic designation based on an individual's height and weight.  In 2000, the Commissioner removed obesity from the Listing of impairments, and replaced this automatic designation with a more individualized inquiry into the combined effect of obesity and other severe impairments afflicting the claimant.  *See* SSR 00-3p, 65 Fed. Reg. 31039, 31040-42 (May 15, 2000) (stating that "obesity may increase the severity of coexisting or related impairments . . . . especially [with respect to] musculoskeletal, respiratory, and cardiovascular impairments. . . . [and also for] mental disorders").[4]  Hence, an ALJ should consider the effect of a claimant's obesity, both individually and in combination with her other impairments, at step three and at every subsequent step.  *Diaz v.*

---

[4]  Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially change SSR 00-3p.  *See Rutherford v. Barnhart,* 399 F.3d 546, 552 n. 4 (3d Cir. 2005).

*Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

The Third Circuit requires an ALJ to "set forth the reasons for h[er] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)). Specifically, the ALJ must provide a "discussion of the evidence" and an explanation of her conclusion sufficient to enable meaningful judicial review. *Id.* at 120. Here, the ALJ listed "obesity" as one of Plaintiff's severe impairments, (R. 13), and further stated in her decision that she had "considered the impact of [Plaintiff's obesity] in conjunction with his [sic] other impairments in making the determination." (R. 15.) The question we must resolve is whether it is sufficient for an ALJ to merely state that she has considered the impact of a claimant's obesity without any further discussion or explanation. We conclude that it is not.

The government relies upon *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005), to argue that an ALJ's discussion of obesity can be minimal in order to comply with SSR 02-1p. In *Rutherford*, the ALJ failed to explicitly mention the claimant's obesity, and the court concluded that the ALJ had implicitly addressed obesity by referring to reports submitted by doctors aware of the condition. *Id.* at 553. However, *Rutherford* differs from this case in that the claimant there had not suggested "obesity" as a severe impairment, nor had the ALJ considered it in his opinion. Rather, the facts here are more analogous to *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, a case which limited the reach of *Rutherford*. In *Diaz*, as in the case at bar, the claimant had urged the ALJ to consider her obesity as a severe impairment alone and in combination with her other impairments at step three. 577 F.3d at 504; (R. 13, 15, 54). Because the ALJ determined that the claimant's obesity constituted a severe impairment, the ALJ's failure to provide "*any* discussion of the combined effect of [the claimant's] impairments" warranted remand. 577 F.3d at 504 (emphasis in original). The *Diaz* court found it particularly unconvincing that the claimant's obesity would have no impact on her workplace performance given the claimant's joint

dysfunction.  *Id.*

Here, the ALJ concluded that Plaintiff's obesity constituted a severe impairment.  The ALJ also concluded that Plaintiff has degenerative joint disease of the knees.  (R. 13.)  It may be that the language in *Diaz* stating that a claimant's "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis," applies to Plaintiff Centeno.  *Diaz*, 577 F.3d at 504 (citing *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) and discussing SSR 02-1p's focus on interplay between obesity and joint dysfunction).  Accordingly, we will remand so that the Commissioner may more fully discuss to what extent Plaintiff's obesity in combination with her other impairments impacted her workplace performance.

### 2.  Explanation of the RFC Determination

Plaintiff next argues that the ALJ's residual functional capacity ("RFC") determination is unsupported by specific references to the record and is divorced from the evidence.  (Pl.'s Br. 21.)  The government responds that the ALJ based her determination on the opinions of the State agency psychological medical consultant and the State agency analyst, both of which were confirmed by the record evidence.  (Def.'s Br. 7.)  We agree with the government.

The ALJ determined that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. § 404.1567(b)[5] which involved no prolonged standing or walking, in self-paced work, involving simple routine one to two step tasks, and no detailed instructions."  (R. 15.)  From what we can discern, Plaintiff's position rests on an unjustified refusal to accept the underlying premises of this RFC assessment.  For example, Plaintiff argues that "there is no such thing as

---

5   Section 404.1567(b) defines "light work" as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

light work without standing and walking for prolonged periods" (Pl.'s Br. 21), despite the fact that the definition of "light work" in § 404.1567(b) specifically includes jobs that "involve[] sitting most of the time with some pushing and pulling of arm or leg controls." Plaintiff also takes issue with the concept of "self-paced work," arguing that "[n]o one can work as [sic] his own pace in competitive employment." (Pl.'s Br. 22.) However, this Court is not in a position to invalidate the established classification of "self-paced work." Rather, our review is limited to whether the ALJ's determination of Plaintiff's RFC, which includes "self-paced work," is supported by the substantial evidence.

Here, the ALJ spent four pages of her decision outlining the evidence on which she relied.[6] (R. 15–19.) In her decision, the ALJ discusses medical records including MRIs, X-rays, and other neurological exams, (R. 15 (citing Ex. B1F, B2F, B11F, and B12F)). She refers to treatment notes from Plaintiff's marital counseling sessions, which she found did not provide an independent evaluation of Plaintiff's symptoms or functional abilities. (R. 16 (citing Ex. B4F)). She points out that the August 2006 records generated by psychological consultative examiner Dr. Stephanie Haymaker describe Plaintiff as oriented, logical, coherent, and goal-directed. (*Id.* (citing Ex. B5F).) The ALJ also notes that the December 2006 VA treatment record documents Plaintiff's self-professed pain and anxiety but describes her thoughts as clear, coherent and goal-directed. (*Id.* (citing Ex. B11F).) The ALJ's decision also describes the Plaintiff's testimony at the hearing regarding the pain in her back, legs, and hands, and its effect on her ability to stand, walk, sleep and concentrate. (*Id.*)

The ALJ's decision gives substantial weight to State Agency medical consultant Dr. Milton D'Anton's September 2006 mental assessment, which indicated that most of Plaintiff's

---

[6] While citation to specific pages in the record would have greatly aided this Court's review of the ALJ's decision, that failure alone does not provide grounds for this Court to conclude that the decision was unsupported by substantial evidence.

mental abilities were not significantly limited, and that she was only moderately limited in her ability to remember locations, remember or carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, and complete a normal workweek. (R. 18 (citing Ex. B8F).) The decision also gives substantial weight to State Agency medical consultant Dr. Joseph Udomsaph's October 2006 physical assessment, which concluded that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours a day, sit 6 hours a day, and occasionally perform postural activities other than climbing ladders, ropes or scaffolds. (R. 18 (citing Ex. B9F).)[7]

Given the detail with which the ALJ described the various records and opinions that informed her decision, we cannot conclude that the RFC determination was unsupported by the substantial evidence. Despite Plaintiff's assertion that the ALJ failed to "anchor[] the RFC to the actual evidence," (Pl.'s Br. 26), we find that the ALJ's recitation of the evidence as well as the weight explicitly given to the State Agency consultants' mental and physical assessments make clear which evidence drove the ALJ's RFC determination in this case.

### 3. Rejection of Medical Opinions of Dr. Javia, Mr. Dueker, and Mr. Cathcart

Plaintiff argues that the ALJ improperly rejected the uncontradicted opinions of treating sources in favor of the ALJ's own medical conclusions. (Pl.'s Br. 27.) Specifically, Plaintiff argues that the ALJ should have accepted Mr. Dueker's diagnosis of major depression and post-traumatic stress disorder, Dr. Javia's recommendation of surgery, and Mr. Cathcart's determination of Plaintiff's mental abilities. (*Id.* at 27.)

An ALJ typically must give great weight to a treating source's[8] opinion unless other

---

[7] Incidentally, the ALJ discredited Dr. Errico's August 2003 report indicating more limited exertional abilities due to its lack of support in the other evidence as well as its inconsistency with objective studies and Plaintiff's April 2006 statement that her pain was at an acceptable level. (R. 18.)

[8] A treating source may be any of the "[a]cceptable medical sources" specified in 20 C.F.R. § 404.1513(a), including licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and

medical evidence contradicts it. *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989). However, a treating source's opinion does not receive controlling weight where it is inconsistent with the other substantial evidence, or where it is not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). Where contradictory evidence exists, an ALJ may reject a treating source's opinion as long as the ALJ explains the reasons for doing so. *Allen*, 881 F.2d at 41. Moreover, when the Commissioner chooses not to give a treating source's opinion controlling weight, he must determine the proper weight by applying the factors enumerated in the regulations, including the length of the treatment relationship, the frequency of examinations, the nature and extent of the treatment relationship, and consistency with the record. 20 C.F.R. § 404.1527(d)(2).

As an initial matter, it appears from Mr. Dueker's "LCSW" designation that he is a social worker and not a "[l]icensed or certified psychologist" as required by 20 C.F.R. § 404.1513(a)(2). (R. 599.) Accordingly, he does not constitute an "acceptable medical source," as is necessary to be considered a "treating source" and thereby receive controlling weight. Additionally, it appears that the ALJ did consider Mr. Dueker's opinion, given that the ALJ concluded that Plaintiff's impairments included depression and possible post-traumatic stress disorder (R. 13, 16–17), both of which are suggested in Mr. Dueker's medical narrative, (R. 598). Accordingly, we do not find that Mr. Dueker's opinion was improperly rejected because it does not appear to have been rejected.

Mr. Cathcart's status is somewhat unclear, given that his title is "Readjustment Counseling Therapist" (R. 607.) If the government is correct in its assertion that he is a "family counselor" and not a licensed psychologist, then he would also fail to constitute an "acceptable medical source," and therefore could not be considered a "treating source." However, the Court need not

qualified speech-language pathologists.

resolve this factual discrepancy because, whatever Mr. Cathcart's designation, the ALJ properly stated in the decision her reasons for giving little weight to his August 2003 opinion indicating the Plaintiff's poor mental abilities. (Ex. B18F.) Specifically, the ALJ noted Mr. Cathcart's failure to document specific symptoms or limitations. (R. 19.) The ALJ also noted that Mr. Cathcart's opinion was contradicted by (1) 2006 mental examinations just prior to Plaintiff's date last insured reflecting oriented and logical thought processes, (Ex. B5F), and (2) Plaintiff's continued ability to engage in activities such as shopping, paying bills, and volunteering. (R. 19.)

It is undisputed that Dr. Javia is a "treating source." Here again, the ALJ properly explained her reasons for rejecting Dr. Javia's August 2008 report, which indicated essentially the same poor mental abilities as Dr. Cathcart's report. Namely, the assessment was rendered two years after Plaintiff's date last insured, and was therefore too far removed from the relevant timeframe. (R. 19 (citing Ex. B15F).) Additionally, the ALJ noted that the treatment records during the relevant time period were inconsistent with the extreme limitations reported by Dr. Javia. (*Id.*)[9]

Thus, we cannot conclude that, as Plaintiff suggests, the ALJ simply rejected the opinions of Mr. Dueker, Mr. Cathcart and Dr. Javia in favor of her own conclusions. To the contrary, the ALJ appears to have accepted Mr. Dueker's opinion and adequately stated on the record her reasons for according little weight to the opinions of Mr. Cathcart and Dr. Javia.

### 4. Evaluation of Pain Symptoms

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain. (Pl.'s Br. 28–33.) The government responds that the ALJ did consider Plaintiff's subjective complaints of pain and simply discredited Plaintiff's statements in light of the objective medical

---

[9] We also note that forms like the one completed by Dr. Javia that require the completing physician or psychiatrist to "'check a box or fill in a blank' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

evidence. (Def.'s Br. 9–11.)

A claimant's subjective symptomology, such as pain, may support a finding of disability. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984). However, the claimant's complaints regarding pain "shall not alone be conclusive evidence of disability;" rather, "there must be medical signs and findings . . . which, when considered with all evidence required to be furnished . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). That is, "subjective complaints of pain, without more, do not in themselves constitute disability." *Green*, 749 F.2d at 1070 (emphasis omitted). In considering a claimant's symptoms, such as pain, an ALJ is to consider the following seven factors: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, for the pain or other symptoms; (vi) any measures used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ recited Plaintiff's testimony regarding the pain in her back, legs, and hands. (R. 17.) The ALJ went on to conclude that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her back and joint pain were inconsistent, in that she claimed in April 2006 that the pain was "8/10," but then admitted in the same evaluation that the pain was "at an acceptable level and did not significantly interfere with her activities of daily living." (R. 17); (*see* R. 543). The ALJ also noted that the objective medical studies consistently showed "mild to moderate" abnormalities throughout the period in question. (R. 18 (citing Ex. B1F, B11F).)

Plaintiff asserts that the ALJ's decision must be reversed and remanded for failure to

undertake an analysis of the seven factors listed in 20 C.F.R. § 404.1529(c)(3)(i)–(vii). (Pl.'s Br. 28, 33.) Although it is preferable for an ALJ to analyze as many of these factors as is applicable in order to provide sufficient findings for judicial review, we are not inclined to stretch this list into an absolute requirement whereby failure to discuss all of the factors will dictate remand. However, remand remains appropriate here because the ALJ did not clearly or explicitly address these factors, and instead concluded that Plaintiff's statements were inconsistent and unsupported by the record. (R. 17.)[10] Earlier in the ALJ's decision at "step two" of the sequential analysis, the ALJ concludes that Plaintiff's gastroesophageal reflux disease (GERD), incontinence, and hand impairment were not severe impairments because they were "adequately controlled with medication." (R. 13–14.) By implication, it would seem that medication failed to sufficiently counteract those of Plaintiff's impairments that were deemed severe. Yet, in explaining her RFC determination, the ALJ does not address the effect, if any, of Plaintiff's medications on her pain symptoms under § 404.1529(c)(3)(iv). Additionally, in light of our conclusion above that the ALJ failed to sufficiently explain the effect of Plaintiff's obesity in combination with her other impairments, *supra* IV.D.1, the ALJ's failure to address whether Plaintiff's obesity aggravated her joint pain under § 404.1529(c)(3)(iii) is equally of concern. Thus, we conclude that the ALJ failed to sufficiently evaluate on the record Plaintiff's subjective complaints of pain, and we remand for further consideration.

### 5. Existence of Other Jobs in National Economy

To determine whether jobs existed in significant numbers in the national economy, the

---

[10] We also note here that the ALJ's statement that "objective studies are fairly consistent throughout the entire period at issue and document mild to moderate abnormalities," (R. 17–18), is inadequately supported by her blanket citation to Exhibits B1F and B11F for two reasons. First, the period at issue is from the onset date, September 30, 2003, through the date last insured, December 31, 2006. Exhibit B1F consists of MRI results from August 28, 2002 and June 27, 2001, both of which were before the onset date. (R. 194–204.) Second, Exhibit B11F includes forty-five pages of medical records ranging from April 4, 2006 to January 10, 2007. (R. 507 – 552.) Absent citations to specific pages in the record, we are unable to determine which "objective studies" the ALJ is referring to in order to reach her conclusion.

ALJ relied upon the testimony of vocational expert Dr. Carolyn Rutherford[11] elicited in response to the ALJ's hypothetical.  (R. 20.)  Plaintiff argues that the ALJ's hypothetical failed to reasonably convey the extent of Plaintiff's mental limitations, and that accordingly the expert's answer cannot constitute substantial evidence.  (Pl.'s Br. 25–26, 39–41.)

Under Third Circuit case law, an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant."  *Valenti v. Comm'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554 (emphasis in original)).  Rather, an ALJ need only include in a hypothetical those limitations that are "*credibly established*."  *Id.* (quoting *Rutherford*, 399 F.3d at 554 (emphasis in original)).

Here, the ALJ posed the following hypothetical at the hearing on September 4, 2008:

> I'd like you to begin by assuming we're talking about an individual of this claimant's age, education and past work history.  Further assume the individual is capable of performing a range of light work that does not require prolonged standing or walking.  Does not involve detailed instructions and is confined to routine one to two-step tasks.  The work should also be self-paced in nature.  Could an individual with these limitations do the work that Ms. Centeno has done?

(R. 67.)  Plaintiff takes issue with the fact that this hypothetical did not include restrictions evidenced by the "plaintiff's treating physicians."  (Pl.'s Br. 39.)  As explained above, *supra* III.D.2, Mr. Dueker does not fall under the treating source rule of § 404.1529(c)(3), and the ALJ discredited the opinions of Mr. Cathcart and Dr. Javia based on reasons clearly stated on the record.  Accordingly, it appears that the ALJ determined that the limitations stated by these sources were not credibly established.  Therefore, the ALJ was not obliged to include these limitations in the hypothetical, and the vocational expert's testimony in response constitutes substantial evidence in support of the ALJ's finding.

---

[11]  Dr. Rutherford testified that an individual with Plaintiff's, age, education, past work experience, and RFC, could perform the jobs of an assembler, inspector, and packer.  (R. 67–68.)

IV.     CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 3rd day of December 2010

ORDERED that Plaintiff's appeal [1] is GRANTED; and it is further

ORDERED that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

                                                */s/ Anne E. Thompson*
                                                ANNE E. THOMPSON, U.S.D.J.